## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MAURICE COLLINS,

    Plaintiff,

v.

NATIONAL STUDENT LOAN PROGRAM,

    Defendant.

Civil No. 17-5345 (RMB/JS)

**OPINION**

APPEARANCES:

KIMMEL & SILVERMAN, P.C.
By: Kareem Raouf Seifeldin, Esq.; Rachel Rebecca Stevens, Esq.;
Richard J. Albanese, Esq.; Amy Lynn Bennecoff Ginsburg, Esq.
30 East Butler Pike
Ambler, Pennsylvania 19002
    Counsel for Plaintiff Maurice Collins

LAW OFFICES OF KENNETH L. BAUM, LLC
By: Kenneth L. Baum, Esq.
167 Main Street
Hackensack, New Jersey 07601
    Counsel for Defendant National Student Loan Program

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff Maurice Collins ("Plaintiff") brought this action against Defendant National Student Loan Program ("Defendant" or "NSLP"), alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. Now, this matter comes before the Court upon the parties' cross-motions for summary judgment. Plaintiff moves for Summary Judgment on TCPA liability ("Pl.'s MSJ")[Dkt. No. 36-1], asserting that Defendant's system for initiating calls to cell phones constitutes an Automated Telephone Dialing System ("ATDS"). In opposition, Defendant filed its own motion for Summary Judgment ("Def.'s MSJ")[Dkt. No. 39-5], arguing that its LiveVox Human Call Initiator system requires manual human intervention to initiate each phone call and, thus, does not meet the definition of an ATDS under the TCPA. For the reasons set forth below, the Court will **DENY** Plaintiff's motion for summary judgment and **GRANT** Defendant's motion for summary judgment.

I.  **FACTUAL AND PROCEDURAL BACKRGROUND**

Defendant is a private, non-profit student loan guaranty agency in the Federal Family Education Loan ("FFEL") program. Defendant's Statement of Undisputed Facts ("DSUMF")[Dkt. No. 39-4], at ¶ 1. Defendant's business involves processing loan applications submitted for guaranty, issuing loan guaranties,

2

assisting lenders with delinquent loans, paying lender claims for loans in default, and collecting those loans. Id. at ¶ 4. From January 7, 2015 through October 3, 2015, NSLP made 206 calls to Plaintiff's cell phone regarding his delinquent student loan payments. Id. at ¶ 23. Plaintiff told Defendant's representatives, on at least one occasion, to cease any further calls to his cell phone. See Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def.'s Resp. to PSUMF")[Dkt. No. 45], at ¶ 6]. However, Defendant's representatives continued to call Plaintiff's cell phone until October 2015, when the loan defaulted and was transferred to the Department of Education for collection. See DSUMF at ¶ 24.

Defendant initiated these calls to Plaintiff's cell phone number using the LiveVox HCI system, a system purportedly designed to involve human intervention in calls directed to cell phone numbers. See Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s Resp. to DSUMF")[Dkt. No. 47], at ¶ 8. The human intervention aspect of the HCI system involves the combination of "clicker agents" and "closer agents." DSUMF, at ¶¶ 11-12. Cell phone numbers are electronically uploaded into the HCI system and presented to the clicker agent, who must physically click a dialog box to launch the call. Id. Although the HCI system selects which phone numbers are presented to the clicker agent, the software cannot

dial the number unless the clicker agent manually clicks the button to initiate the call. Id. If the call is answered, the clicker agent then transfers the call to a "closer agent" who speaks directly with the call recipient. Id.

Defendant utilizes two LiveVox calling systems; one to reach cell phone numbers (HCI) and the other to reach landlines (called "Quick Connect"). See Pl.'s Resp. to DSUMF at ¶ 15. Whereas the HCI software requires human intervention to initiate each call, the Quick Connect system uses some predictive capabilities to call landline numbers. DSUMF at ¶ 15. It is undisputed that the calls to Defendant's cell phone, the only calls at issue in this case, were initiated using the HCI software. See Pl.'s Resp. to DSUMF at ¶ 25. However, Plaintiff alleges that HCI and Quick Connect are simply different "modes" of operation for the same underlying LiveVox system. See Pl.'s MSJ at 7. Thus, Plaintiff alleges that the existence of Defendant's other dialing system demonstrates that "Defendant's LiveVox system as a whole clearly has the present capacity without modification to place calls from a stored list without human intervention." Id. (emphasis added).

Defendant disputes Plaintiff's characterization of its call methodology, arguing that its cell phone and landline dialing systems are separate and distinct, "and each has its own dedicated and separate hardware and software." See Def.'s Resp.

4

to PSUMF at ¶ 11.  Defendant explains that it designates each phone number, received from lenders or loan servicers, as either a landline or cell phone number and then has the number uploaded into the appropriate segregated system.  See id.  Defendant further contends that the LiveVox HCI system "does not have the capacity to autodial" and "contains no features that can be activated, deactivated, or added to the system to enable autodialing."  See DSUMF at ¶ 13.

On July 21, 2017, Plaintiff commenced this action by filing a one-count Complaint [Dkt. No. 1], alleging that Defendant violated the TCPA by using an ATDS to call Plaintiff without his prior express consent.  The parties engaged in discovery, and that process has concluded.  On summary judgment, the parties dispute whether Defendant's LiveVox HCI system for initiating calls to Plaintiff meets the definition of an ATDS under § 227(a)(1) of the TCPA.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012).  A

dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary

judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("[S]peculation and conjecture may not defeat summary judgment."). Moreover, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

**III. ANALYSIS**

　　*A. Defining "ATDS" under the TCPA*

The TCPA was passed by Congress to protect consumers from receiving, "intrusive and unwanted calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013)(citing Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012)). To achieve this goal, the TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a...cellular telephone service." 47 U.S.C. § 227(b)(1)(A). Under the statute, an "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

At summary judgment, the case hinges on whether Defendant's call system qualifies as an ATDS under the TCPA. Defendant argues that the LiveVox HCI system is not an ATDS or "predictive dialer" under the TCPA because it does not use random or sequential number generators, and each call must be initiated through manual human intervention. See Def's MSJ at 15. According to Defendant, the HCI system cannot initiate a call unless the clicker agent clicks the dialog box to dial that specific cell phone number. See DSUMF at ¶ 11.

Plaintiff does not allege that LiveVox HCI automatically generates and dials cell phone numbers completely without human intervention. Rather, Plaintiff argues that Defendant's underlying call system has the potential "capacity" to function as an ATDS. Plaintiff defines an ATDS as: "(1) Any equipment that has the <u>capacity</u> to dial calls from stored lists without human intervention at the point of dialing <u>whether or not it is</u>

8

<u>actually used</u> to do so when a particular call is placed; OR (2) has the <u>capacity</u> to dial calls from stored lists without <u>meaningful</u> human intervention as determined on a case by case basis." See Pl.'s MSJ at 7(citing <u>Meyer v. Portfolio Recovery Associates</u>, 707 F.3d 1036, 1043 (9th Cir. 2012))(emphasis added). Relying on this broad definition, Plaintiff argues that Defendant's dialing equipment is part of a system with the latent or potential "capacity" to place autodialed calls. Plaintiff also argues that LiveVox HCI lacks any "meaningful" human intervention. <u>See</u> <u>id.</u>

Over the past two decades, there have been numerous attempts to clarify the statutory definition of ATDS. See <u>In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 27 F.C.C. Rcd. 15391, 15392 ¶ 2 n.5 (2012)("2012 Ruling"); <u>In re of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 F.C.C. Rcd. 559, 566 ¶ 13 (2008)("2008 Ruling"); <u>In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 18 FCC Rcd. 14014, 14091, 14093 (2003)("2003 Ruling"). Generally, courts have held that the basic function and defining characteristic of an ATDS is "the capacity to dial numbers without human intervention." <u>See</u> <u>Glasser v. Hilton Grand Vacations Co., LLC.</u>, 2018 WL 4565751, at *2 (M.D. Fla. Sept. 24, 2018)(citing 2003 Ruling, 18 F.C.C. Rcd. at 14091 ¶ 132). In 2015, the FCC issued its most recent ruling

that purported to clarify and effectively expand the definition of an ATDS. See In re Rules & Regulations Implementing the Tel.Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015)("2015 Ruling"). Notably, the 2015 Ruling expanded the concept of "capacity," holding that "the capacity of an [ATDS] is not limited to its current configuration but also includes its potential functionalities" with modifications such as software changes. Id. at 7974.

In March 2018, the United States Court of Appeals for the District of Columbia Circuit struck down the 2015 Ruling, holding that the FCC's effort to expand the definition of an ATDS constituted an "unreasonably expansive interpretation of the statute." ACA International v. FCC, 885 F.3d 687, 692 (D.C. Cir. 2018). The D.C. Circuit scrutinized the FCC's statutory interpretation of the term "capacity," finding that FCC's interpretation was "utterly unreasonable in the breadth of its regulatory [in]clusion," because a "straightforward reading of the ruling invites the conclusion that all smartphones are [ATDSs]." Id. at 699.

Although the United States Court of Appeals for the Third Circuit initially followed the broad interpretation of "capacity" from the 2015 Ruling, see Dominguez v. Yahoo, Inc., 629 F. App'x 369, 372 (3d Cir. 2015)("Dominguez I"), following ACA International, the Third Circuit revisited the issue and

invalidated the 2015 Ruling. See Dominguez v. Yahoo, Inc., 894 F.3d 116, 119 (3d Cir. 2018)("Dominguez II")("In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 Declaratory Ruling."). In Dominguez II, the Third Circuit held that what makes a device an ATDS is not the "latent or potential capacity to function as an autodialer," but rather the "present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." See id. at 119, 121; accord King v. Time Warner Cable Inc., 894 F.3d 473, 481 (2d Cir. 2018)("we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software.").

### B. *The LiveVox HCI System*

At summary judgment, the parties dispute the precise details of the LiveVox HCI system (for example, whether the HCI system for dialing cell phones is distinct from Defendant's Quick Connect system used to call landlines). However, there is no dispute that all calls from Defendant's representatives to Plaintiff were placed using the HCI system, which utilizes human clicker agents. See Pl.'s Resp. to DSUMF at ¶ 25.

Plaintiff admits that all calls from Defendant were initiated using the HCI system, but argues that LiveVox HCI qualifies as an ATDS because the system lacks any "meaningful" human intervention or discretion. According to Plaintiff, the clicker agent "does not have a choice of which number on their screen to call, but merely clicks from the bottom to the top through the list as there is no decline, next, or skip button that would allow a 'clicker' agent to skip a telephone number." Pl.'s MSJ at 12. Despite this lack of discretion, Plaintiff acknowledges that the HCI system only initiates a call if the clicker agent "push[es] a button which dials the number." See PSUMF at ¶ 15.

Although LiveVox HCI's level of human intervention may seem minimal, every court to examine this issue has held that the clicker agent's role prevents the system from qualifying as an ATDS under the statute. See, eg., Fleming v. Associated Credit Servs., Inc., No. 16-3382, 2018 WL 4562460, at *11 (D.N.J. Sept. 21, 2018)("[t]he action of the 'clicker agent'… constitutes enough 'human intervention' to bring the system outside the statutory definition of an ATDS"); Schlusselberg v. Receivables Performance Mgmt., LLC, No. CV 15-7572, 2017 WL 2812884, at *3 (D.N.J. June 29, 2017)("the inclusion of human operation in the HCI system does not allow the system itself to produce telephone numbers to be called, using a random or sequential number

generator"); Hatuey v. IC Sys., Inc., 2018 WL 5982020, at *7 (D. Mass. Nov. 14, 2018)(holding that the act of the clicker agent "alone disqualifies the LiveVox HCI system as an ATDS under the TCPA"); Marshall v. CBE Grp., Inc., 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018)("the overwhelming weight of authority applying this element hold that 'point-and-click' dialing systems… do not constitute an ATDS as a matter of law in light of the clicker agent's human intervention"); Smith v. Stellar Recovery, Inc., 2017 WL 1336075, at *5 (E.D. Mich. Feb. 7, 2017), report and recommendation adopted, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017)("When the HCI system is in use, human intervention—the function of the clicker agents—is clearly required"); Arora v. Transworld Sys. Inc., 2017 WL 3620742, at *3 (N.D. Ill. Aug. 23, 2017)("every call made using the Human Call Initiator requires direct human intervention to initiate"); Pozo v. Stellar Recovery Collection Agency, Inc., 2016 WL 7851415, *3 (M.D. Fla. 2016)("Dialing systems which require an agent to manually initiate calls do not qualify as autodialers under the TCPA"). Accordingly, Defendant's HCI system does not constitute an ATDS under the TCPA because the system cannot initiate calls without manual human intervention by a clicker agent.

Plaintiff also contends that the HCI software is part of a larger system with the potential capacity to function as an

13

ATDS. Despite this assertion, Plaintiff's own statements demonstrate that the HCI system, as presently used by Defendant, operates separately from the Quick Connect system. In his response to Defendant's Statement of Undisputed Material of Facts, Plaintiff admits that the HCI software operates on a separate server from Quick Connect, that lists with phone numbers for cell phones and landlines are uploaded to different servers, that "LiveVox HCI mode has its own software and hardware," and that "the HCI server itself cannot be modified by NSLP, does not have a random or sequential number generator, and does not have an artificial or pre-recorded voice." See Pl.'s Resp. to DSUMF at ¶¶ 11, 13, 16. Based on the record, including Plaintiff's own admissions, this Court finds that the LiveVox HCI system is separate and distinct from the Quick Connect system.

As clarified by the Third Circuit in Dominguez II, after ACA International, Plaintiff cannot rely on an argument that the system "had the latent or potential capacity to function as [an] autodialer." Dominguez II, 894 F.3d at 119. Instead, Plaintiff must provide evidence that the system "had the present capacity to function as an autodialer." Id. Ultimately, Plaintiff fails to cite any evidence in the record that would lead a reasonable juror to conclude that LiveVox HCI has the "present capacity" to initiate autodialed calls to cell phone numbers without

14

modifications to the system.  Therefore, Plaintiff's TCPA claim fails as a matter of law.

**IV. <u>CONCLUSION</u>**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be GRANTED and Plaintiff's Motion for Summary Judgment will be DENIED.  An appropriate Order shall issue on this date.

DATED: December 20, 2018

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

15